**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 25-cr-40019-SMY |
| | ) | |
| CHRISTOPHER L. WEBB, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

**YANDLE, Chief Judge:**

Defendant Christopher Webb is charged with possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A)(viii) (Doc. 1).  Now pending before the Court is Defendant's Motion to Suppress Evidence and Statements (Doc. 25). The Government has responded in opposition to the motion (Doc. 28).  For the following reasons, the motion is **DENIED**.

**Factual Background**

Christopher Webb is charged with possession with intent to distribute a controlled substance based on evidence obtained through a February 21, 2025, search of a camper Webb allegedly used as a primary residence.  The search was performed by local authorities pursuant to a warrant issued by a state judge in the Third Judicial District of Illinois based on an affidavit attached to the warrant application.

The following are the facts as presented in the affidavit and are undisputed (Doc. 28-1): Coty Hampton was questioned by local authorities following a report of a residential burglary on February 21, 2025.  Hampton and two other individuals had been identified in surveillance footage,

and a consent search of Hampton's person and vehicle yielded a small amount of methamphetamine and pieces of stolen property from the burglary. During an interview with the local police department, Hampton provided a statement detailing the burglary. He explained that after the burglary, he drove one of his accomplices to the camper where Christopher Webb is alleged to have been residing, which is located on the property of another individual. According to Hampton, his accomplice entered the camper and exchanged some of the stolen property for methamphetamine, a portion of which was later given to Hampton as payment for providing transportation. Hampton also claimed to have personally observed large amounts of narcotics and cash inside the camper within the previous month.

Based on the information provided by Hampton, local authorities applied for a search warrant which was issued later the same day. When executing the search warrant, the officers found approximately 203.6 grams of methamphetamine. Webb was subsequently arrested and agreed to a post-Miranda interview in which he gave inculpatory statements confirming his participation in trafficking methamphetamine.

## Legal Standard

Pursuant to the Fourth Amendment, no search warrant shall be issued unless supported by probable cause. U.S. CONST. amend. IV. Probable cause exists when a supporting affidavit "presents a total set of circumstances which create a 'fair probability' that a search will uncover evidence of a crime." *United States v. Haynes*, 882 F.3d 662, 665 (7th Cir. 2018) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The probable cause determination of the issuing judge or magistrate is afforded great deference. *Id.*

**Discussion**

Webb moves to exclude evidence obtained from the search of the camper as well as his statements made subsequent to arrest, arguing the information contained in the affidavit was insufficient to establish probable cause.  Specifically, Webb argues the information Coty Hampton provided to local police lacked detail, there was no firsthand observation of the alleged drug transaction, there was no corroboration, and the informant did not testify before the issuing judge. The Government argues the information received from Hampton was reliable because his statements included an admission of his personal participation in a crime. In the alternative the Government argues a warrant was not necessary because the automobile exception applies to the search of the camper and the good faith exception to the exclusionary rule also applies.

When the information in search warrant application is based primarily on a tip from an informant, courts look to the following factors in assessing the informant's credibility: (1) the level of detail provided; (2) the extent of the informant's firsthand knowledge; (3) the degree of corroboration by law enforcement; (4) the time between the reported events and the warrant application; and (5) whether the informant testified before the issuing judge.  *United States v. Johnson*, 655 F.3d 594, 600 (7th Cir. 2011).  No single factor is determinative.  *United States v. Taylor*, 471 F.3d 832, 840 (7th Cir. 2006).

Here, according to the affidavit, Hampton told officers the address of the camper, that Webb used the camper as his residence, and that he personally had seen "large amounts of narcotics and cash" inside the camper within the previous month (Doc. 28-1 at 1-2).  However, as Defendant points out, the affidavit does not include any information about the type or quantity of drugs Hampton claims to have seen or their location within the camper, nor does it identify the stolen items that were traded for drugs and thus would likely be found inside the camper—things

Hampton presumedly would have known. By itself, this information falls short of the level of detail the Seventh Circuit has found sufficient to support an informant's reliability. *See, e.g.*, *United States v. Peck*, 317 F.3d 754, 756 (7th Cir. 2003) (No probable cause where "[t]he only details [the informant] gave were that she had been in the house and was shown drugs . . . . [she] failed to give specific details about … where the drugs were hidden, the total amount of drugs Peck possessed, or the frequency with which Peck sold drugs.")

With respect to the extent of his firsthand knowledge, Hampton claimed to have driven his accomplice to the camper where the drug transaction took place and to have received a share of the methamphetamine as payment for providing transportation. While Hampton did not enter the camper or directly witness the alleged transaction, the fact that he saw his accomplice exit the camper with illegal narcotics and received a portion of said narcotics supports the conclusion that more narcotics would be found within the camper. This is all the probable cause inquiry requires. *See United States v. Miles*, 86 F.4th 734, 741 (7th Cir. 2023) (finding probable cause when an accomplice "gave the [informant] meth immediately after exiting the residence and returning to a vehicle," even though the informant "did not enter the house during the controlled buys").

The Government asserts Hampton's statements about the burglary were corroborated by a review of surveillance footage. While this may be true, Webb is not alleged to have participated in the burglary. The corroboration of statements regarding a separate crime to which Webb was not a party can only bolster Hampton's general credibility—it does not serve as corroboration of his statements regarding the alleged drug transaction between Webb and a third party. *See Junkert v. Massey*, 610 F.3d 364, 368 (7th Cir. 2010) ("[W]hile this information might go to the [informant]'s past reliability on other crimes not involving Junkert, it supplies no details to support the [informant]'s generalized assertions that Junkert was engaged in criminal activity.") (citing

*Peck*, 317 F.3d at 757).  The affidavit does not reflect corroboration of Hampton's statements regarding Webb's alleged possession or sale of methamphetamine.

The alleged drug transaction, the police interview with Hampton, and the application for and execution of the warrant all occurred on the same day.  Although Hampton claimed he observed "large amounts of narcotics and cash" inside the camper approximately a month before his interview, this does not diminish his reliability given the recency of the information regarding the drug exchange in the same camper.  Finally, the Court concludes from the lack of evidence or suggestion by the Government that Hampton testified before the issuing judge that no such testimony was given.

An informant's credibility is determined under the totality of the circumstances, and other considerations can compensate for deficiencies under any one factor.  *Taylor*, 471 F.3d at 840 ("[A] deficiency in one factor may be compensated for by … some other indication of reliability."). In this case, Hampton's firsthand knowledge regarding the exchange of stolen property for methamphetamine and the short time between the reported events and the warrant application indicate his reliability as an informant.  Moreover, although the affidavit contains no express statements by law enforcement regarding Hampton's reliability, such as previous history of providing accurate information to law enforcement, the fact that he gave statements against penal interest bolsters his credibility.  Hampton not only confirmed his participation in a burglary but also admitted to accepting a portion of the methamphetamine from the alleged exchange as payment. *See United States v. Olson*, 408 F.3d 366, 371 (7th Cir. 2005) ("[I]nformants attempting to strike a bargain with the police have a strong incentive to provide accurate and specific information rather than false information about a defendant's illegal activity.") (cleaned up).

Even if the totality of the circumstances did not support a finding of probable cause, the Court finds the good faith exception to the exclusionary rule would apply.  Under that doctrine, an officer's good-faith reliance on the validity of a search warrant will be upheld unless the affiant provided false information, the issuing judge wholly abandoned the judicial role, the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or the warrant was "so facially deficient in particularizing its scope that the officers could not reasonably presume it was valid." *United States v. Leon*, 468 U.S. 897, 923 (1984).

As previously noted, the affidavit in question included information from an informant with firsthand knowledge that a drug exchange had occurred at a specified address within the past twenty-four hours, and the tip was bolstered by statements against penal interest.  While the affidavit was relatively light on detail and corroboration, it was not so totally lacking in indicia of probable cause that a reasonable law enforcement officer would not think the resulting warrant valid.  *See United States v. Koerth*, 312 F.3d 862, 870 (7th Cir. 2002).

## Conclusion [1]

For the foregoing reasons, the Court finds the search warrant issued here was valid and supported by probable cause. Accordingly, Defendant Christopher L. Webb's Motion to Suppress (Doc. 25) is **DENIED**.

**IT IS SO ORDERED.**

**DATED: March 17, 2026.**

**STACI M. YANDLE**
**Chief U.S. District Judge**

---

[1] The Government is correct that mobile homes and other vehicles that can be used as residences fall within the scope of the automobile exception. *See California v. Carney*, 471 U.S. 386, 393 (1985). However, if the vehicle is within the curtilage of someone's home, the automobile exception does not apply. *Collins v. Virginia*, 584 U.S. 586, 596 (2018) ("The automobile exception does not afford the necessary lawful right of access to search a vehicle parked within a home or its curtilage."). In this case, the camper allegedly being used by Defendant as his residence was parked on the private property of a third party. Given the Court's rulings herein, it is not necessary for the Court to determine whether the automobile exception applies.